Danny Lee BEGLEY and Donald K. Ryniec, individually and on behalf of all others similarly situated, Plaintiffs,

v.

ACADEMY LIFE INSURANCE COMPANY, Academy Insurance Group, Pension Life Insurance Company of America and Non–Commissioned Officers Association of America, Inc., Defendants.

George Stephenson, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Academy Life Insurance Company, Academy Life Insurance Group, and Non–Commissioned Officers Association of America, Inc., Defendants.

CIV.A. Nos. 1:98–CV–2189–CAP, 1:98–CV–2393–CAP.

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 26, 2001.

Michael J. Bowers, Mark Gerald Trigg, Meadows Ichter & Trigg, Craig Mitchell Frankel, Frankel & Associates, Atlanta, GA, Patricia M. Hamill, James J. Rohn, Conrad O'Brien Gellman & Rohn, Philadelphia, PA, for defendants.

Martin D. Chitwood, Nikole M. Davenport, Craig Gordon Harley, Chitwood & Harley, W. Pitts Carr, Render Crayton Freeman, David H. Pope, Carr Tabb Pope & Freeman, Atlanta, GA, Christopher C. Casper, A. Anderson Dogali, W. Christian Hoyer, John A. Yanchunis, James Hoyer Newcomer & Smiljanich, Tampa, FL, Ronald R. Parry, Robert R. Sparks, Arnzen Parry & Wentz, Covington, KY, John J. Stoia, Milberg Weiss Bershad Hynes & Lerach, San Diego, CA, Melvyn I. Weiss, Milberg Weiss Bershad Hynes & Lerach, New York City, for plaintiffs.

### ORDER

PANNELL, District Judge.

The plaintiffs filed the instant actions, seeking class certification of their respective complaints alleging federal claims and various state law claims. The federal claims were dismissed by this court in its order dated September 20, 1999 [Doc. No. 17–1; 35–1].[1] The pending state law claims are for breach of fiduciary duty, negligent misrepresentation, and negligence in both cases and a violation of O.C.G.A. §§ 33–6–3, 33–6–4, unfair trade practices in the in the business of insurance, in the 1:98–CV–2393–CAP case. The court's subject matter jurisdiction over these cases is based on diversity. *See* 28 U.S.C. 1332. This matter is now before the court on, inter alia, the plaintiffs' motion to certify the class [Doc. No. 44–1] [2].

In addition to the motion for class certification, there are several other pending motions upon which the court will now rule. The defendants' motions for oral argument on the plaintiffs' motion for class certification [Doc. Nos. 63–1; 115–1] are DENIED. The plaintiffs' motions to exceed page limitations to their reply brief in support of their motion for class certification [Doc. Nos. 66–1; 120–1] are GRANTED nunc pro tunc. The plaintiffs' motions to strike the defendants' memorandum in support of their sur-reply in opposition to the plaintiff's motion for class certification [Doc. Nos. 69–1; 123–1] are DENIED.

### I. FACTUAL BACKGROUND

These actions arise from the sale of life insurance policies to members of the armed forces by the defendants Academy Life Insurance Company, Academy Life Insurance Group (collectively "Academy Life"), and Pension Life Insurance Company of America ("Pension Life"), through the defendant Non–Commissioned Officers Association of America, Inc. ("NCOA"). NCOA, a federally-chartered organization, is alleged to be the conduit through which the defendant insurance companies operated a scheme to sell

---

1. The first docket number listed refers to Civil Action No. 1:98–CV–2393–CAP and the second docket number refers to Civil Action No. 1:98–CV–2189–CAP, except as noted in Footnote 2.

2. This docket number refers only to case No. 1:98–CV–2189–CAP because no motion for class certification was filed in case No. 1:98–CV–2393–CAP. There was, however, a motion to consolidate filed [Doc. No. 21–1] in case No. 1:98–CV–2393–CAP. The court denied this motion, but agreed to consolidate these cases for the purpose of bifurcated discovery on the issue of class certification [Doc. No. 30–1].

their insurance products to servicemen and women.

NCOA holds itself out to be a professional association created for the benefit of non-commissioned officers. It contends that it provides certain benefits to its members, such as retirement planning, scholarship opportunities, and lobbyists to protect the interests of NCOs. The plaintiffs contend that NCOA is nothing more than an extension of Academy Life's and Pension Life's insurance operations and that NCOA service centers located near the gates of U.S. military installations are merely their branch offices. NCOA service centers are owned, maintained, and controlled by the defendant insurance companies. The centers are staffed by the defendants' insurance agents who are called NCOA counselors. Every NCOA counselor is required to be an Academy Life or Pension Life insurance salesperson and they are all paid exclusively by Academy Life or Pension Life. Academy Life and Pension Life have no other salesmen except for these counselors, and they have no other outlet for their insurance products.

The plaintiffs allege that these NCOA counselors are trained by Academy Life and Pension Life to sell unnecessary and expensive life insurance to members of the armed forces through a scheme that exploits NCOA's federal charter and its location near U.S. bases, and which clothes the primary purpose of selling life insurance with the promotion of NCOA's "benefits" of membership.

The plaintiffs contend that the defendants train their counselors to implement their scheme by: (1) signing up new NCOA members to boost the NCOA's membership revenues and Academy Life's and Pension Life's prospects; (2) exploiting the NCOA's reputation as a protector of the NCO; and (3) misrepresenting the life insurance products to generate sales for the betterment of the defendants. A NCOA counselor's allegedly deceptive sales pitch was created by the defendants' executives at their marketing offices in Atlanta, Georgia, and is embodied in a series of videotapes used to train the NCOA counselors. These tapes are called the "Joint Education and Training" ("JET")

series. One of these tapes, entitled "Full Presentation," is a demonstration of the sales pitch the NCOA recommends that its counselors use in selling the defendants' life insurance products. A second video entitled "Presentation Logic" is used to explain in detail the significance of the structure and substance of the sales pitch contained in the "Full Presentation" video. The two videos combine to create the alleged scheme at issue in this case.

The plaintiffs contend that the alleged scheme is designed to work as follows. First, the counselors build confidence in the NCOA by establishing the NCOA as the servicemembers' advocate and protector that can provide the servicemember with a broad range of advice including advice on military and retirement benefits. The videos instruct the counselors that the NCOA is to be described as a professional association similar to the American Medical Association or the National Educational Association. Counselors are also told to tout the fact that the NCOA is federally chartered.

Second, the counselors are instructed to establish a relationship of trust by reminding the NCO that the NCOA has committed itself to do its best to get the very best benefits for the servicemember.

Third, the "Full Presentation" video instructs the counselor, after building up the NCOA, to enroll the prospect as a member of the NCOA and collect a nominal membership fee. After the servicemember is enrolled, the counselor proceeds to the fourth step, developing a need for life insurance.

Fourth, the counselor develops a need for life insurance by preparing a "Personal Affairs Inventory" and a "Government Benefits Analysis" for the servicemember, which the counselor presents as services the NCOA performs for its members. These "services," however, have other purposes. The videos allegedly show how the "Personal Affairs Inventory" can be used to assist the counselor in uncovering sources of income with which insurance can be purchased. Meanwhile, the "Government Benefits Analysis" can be used to create a need for the insurance products by showing how the service-

member's current benefits could be supplemented. After showing the servicemember the need for the insurance product, always referring to it as the "NCOA-recommended program" or "plan," not as insurance, the counselors are told to present the "plan" to the NCO and emphasize its investment features.

Fifth, if at this point of the presentation the servicemember says he or she cannot afford the insurance product, the counselor is instructed to review the servicemember's Leave and Earning Statements to find ways to free up funds, i.e. change the number of exemptions. This is accomplished under the pretense of checking the statements to ensure that they contain the servicemember's correct social security number.

Finally, the counselor closes the sale by telling the NCO that the NCOA has researched many insurance companies and found that the Academy Life and/or Pension Life product is the most appropriately-priced product for its members. The counselor goes on to say that because the counselor and the NCO have met and know each other, it is better for the NCOA counselors to handle the program directly for the NCO instead of sending them to someone whom they do not know and who does not know them.

The plaintiffs cite a 1997 study of Universal Life products sold on the market, which they claim shows that the products sold by the defendants to the class members are the most expensive, have the highest surrender charges, and have the poorest income performance of any of the listed insurance products. The plaintiffs argue that but for the trust gained by the NCOA counselor through its alleged scheme, the class members would not have purchased the defendants' allegedly inferior insurance products.

The plaintiffs are seeking to certify a class consisting of the following individuals:

All present and former non-commissioned U.S. military officers ("NCOs") who, from January 1, 1988, to the present, purchased Universal Life insurance policies issued by Academy Life Insurance Company or Pension Life Insurance Company of America, after joining the Non Commissioned Officers Association of America, Inc. ("NCOA").

## II. LEGAL DISCUSSION

■ Class certification is governed by Federal Rule of Civil Procedure 23. Rule 23 permits the maintenance of a class action when: (1) the class is so numerous that joinder of all its members is impracticable; (2) questions of law or fact common to the class are present; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative parties will sufficiently protect the interests of the class. Fed.R.Civ.P. 23(a). Simply stated, the four requirements are numerosity, commonality, typicality, and adequacy of representation. The burden of proving these prerequisites is on the party or parties seeking class certification. See Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 456 (11th Cir.1996).

If the requirements of Rule 23(a) are met, the court must then inquire further and determine whether the facts before the court satisfy Rule 23(b). Rule 23(b) provides that an action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition, the matter falls into one of the following categories:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent verdicts or where individual adjudications would, as a practical matter, be dispositive of the interests of class members who are nonparties; or (2) the party opposing the class has acted or refused to act on grounds generally applicable to the putative class such that declaratory or injunctive relief with respect to the class as a whole would be appropriate; or (3) questions of law or fact predominate over issues affecting individual members and class adjudication is preferable to other methods of litigation for purposes of a fair and efficient resolution of the controversy.

Hudson, 90 F.3d at 456 n. 8. The plaintiffs are seeking to certify this action under Rule 23(b)(3), arguing that questions of law or fact predominate over individual issues.

## A. The Prerequisites of Rule 23(a)

The first two prerequisites of Rule 23, numerosity and commonality, focus on characteristics of the class, while the second two, typicality and adequacy, focus instead on the desired characteristics of the class representative.

### (1) *Numerosity*

The numerosity requirement simply asks whether there are so many members of the class that joinder of them all is impracticable. Fed.R.Civ.P. 23(a)(1). Whether joinder of the class members is practicable depends on factors such as the size of the class, the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each class member's claim. *See Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir.1981). In the instant case, the class numbers "in the thousands" and the members are located in most of the fifty states and several countries. Further, the defendants do not contend that the plaintiffs do not meet this requirement. For the foregoing reasons, the court finds that the plaintiffs meet the numerosity requirements of Rule 23(a)(1).

### (2) *Commonality*

Rule 23(b)(2) requires that there be questions of law or fact common to the class. The party seeking to maintain a class action should ordinarily be able to satisfy this requirement in its pleadings. *See Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir.1986). And while the merits of the plaintiffs' claims are not before the court at this stage of the litigation, *see Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), "evidence relevant to the commonality requirement is often intertwined with the merits." *Nelson v. United States Steel Corp.,* 709 F.2d 675, 679 (11th Cir.1983). For purposes of class certification, however, the court accepts the plaintiffs' substantive allegations as true and may draw reasonable inferences from the facts before it. *See Senter v. General Motors Corp.,* 532 F.2d 511, 523 (6th Cir.1976).

In the instant case, the plaintiffs common claims are that the defendants used a systematic scheme to sell inferior insurance products to servicemembers to whom they owed a duty. The allegation is that the defendants used the NCOA and their position within that organization to gain the trust of NCOA members and then exploit that trust in order to sell their insurance products. Each member of the putative class purchased insurance products from the defendants' agents, who called themselves "counselors." The defendants do not contend that the plaintiffs do not meet this prerequisite but, rather, argue that the plaintiffs do not meet the related predominance requirement of Rule 23(b)(3), which the court discusses below. For the foregoing reasons, the court finds that the plaintiffs meet the requirement of commonality in Rule 23(a)(2).

### (3) *Typicality*

A class representative's claims or defenses must be typical of the claims or defenses of the class. Fed.R.Civ.P. 23(a)(3). The defendants argue that the claims of the class representatives are not typical of the class because none of the representatives actually read their insurance policy and because they cannot recall all of the details of the presentations they received from the NCOA counselors. The defendants contend that these differences raise different issues and different defenses that are not applicable to the class as a whole.

The class representatives argue that their claims are typical, if not identical, to claims of other members of the class. Their claim is that they were harmed by purchasing an expensive life insurance policy they would not have purchased but for the defendants' deceptive sales scheme that the class representatives allege was designed to convince them that the NCOA, their professional association, investigated and endorsed the insurance policies.

A plaintiff's claim is typical if there is a "nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir.1984). "A

sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Id.* Typicality, however, does not require identical claims or defenses, and minor factual variations will not render a class representative's claim atypical. *See id.* Therefore, the court finds that even if the class representatives did not read their policies and, therefore, their claims may be subject to defenses that the other class members' claims are not, their claims are still typical of the class.

### (4) *Adequacy of Representation*

■ Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The underlying purpose behind this requirement is to ensure that the legal rights of absent class members are protected. *See Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 726 (11th Cir.1987). Generally, the requirements of Rule 23(a)(4) are met if (1) the class representatives do not have interests antagonistic to other class members and (2) if the plaintiffs' counsel can adequately represent the class interests. *See id.* (citing *Griffin v. Carlin,* 755 F.2d 1516, 1532 (11th Cir. 1985)). Even where these two requirements are met, class representatives are not adequate unless they possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative. *Kirkpatrick,* 827 F.2d at 726 (citations omitted).

■ The defendants do not allege that the class representatives have interests antagonistic to the class members but, rather, that the contrast between the class representatives' testimony regarding the alleged scheme and the allegations in the complaint shows that the class representatives are relying too much on their counsel to supply the details of the allegations. The defendants argue that if the class representatives are relying too heavily on their counsel, then they will not be sufficiently involved in this case in order to protect the rights of the class members. It is apparent from a reading of the complaint that it is based not only on the allegations and testimony of the plaintiffs themselves, but on the other evidence that counsel has discovered, such as the training videos, that supports the plaintiffs' allegations and provides the string that connects the class members. The court finds that the class representatives do not have antagonistic interests to other class members and that their reliance on counsel is not "blind reliance" that would interfere with the adequacy of representation but, rather, it is the typical reliance a party places on his counsel to represent him and articulate his claims.

■ The defendants offer the dismissal of a prior action involving the same defendants, and essentially the same plaintiffs' counsel, in Kentucky state court because of the plaintiffs' counsel's failure to meet a deadline as evidence that the same counsel will not vigorously pursue the plaintiffs' claim in this case. The work by the plaintiffs' counsel so far in this matter has shown the court that they are aggressively pursuing the putative class members' claims. They have conducted bifurcated discovery of the class certification issue and filed exhaustive briefs in both related cases. The court further finds that the law firms of Carr, Tabb & Pope; Milberg, Weis, Bershad, Hynes & Lerach; and Chitwood & Harley are qualified and have experienced attorneys who are adequately representing the class representatives and the putative class members.

■ Finally, the defendants argue that Donald Ryniec's court martial for possession of marijuana, and his subsequent false statements regarding it on his insurance application, make him an improper class representative. If the false statement provided the defendants a defense in this case, it would be relevant to the typicality and adequacy of representation requirements. But because the defendants cannot show that Mr. Ryniec intentionally misrepresented this information and because it is not directly related to the claims in this action, the court does not find this issue to be relevant to the instant motion.

For the foregoing reasons, the court finds that the prerequisites of Rule 23(a)(1–4) have

been satisfied. The court will now address whether the plaintiffs meet the predominance and superiority requirements of Rule 23(b)(3).

### B. The Predominance and Superiority Requirements of Rule 23(b)(3)

Rule 23(b)(3) is satisfied when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3). Factors relevant to the predominance and superiority requirements are: (1) the interest of class members in individually controlling the prosecution of the claims; (2) the extent and nature of any other pending actions concerning the same controversy already commenced by class members; (3) the desirability or undesirability of the chosen forum; and (4) potential difficulties in the management of this case as a class action. *See* Rule 23(b)(3).

#### (1) *Predominance*

■■■■ "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (citation omitted). "In order to determine whether common questions predominate, '[the court is] called upon to examine the cause[s] of action asserted in the complaint on behalf of the putative class.' " *Rutstein v. Avis Rent-A-Car Systems, Inc.*, 211 F.3d 1228, 1234 (11th Cir.2000)(quoting *McCarthy v. Kleindienst*, 741 F.2d 1406, 1412 (D.C.Cir.1984)). To qualify as a Rule 23(b)(3) class action, " 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.' " *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1557–1558 (11th Cir.1989)(quoting *Nichols v. Mobile Board of Realtors, Inc.*, 675 F.2d 671, 676 (5th Cir. 1982)). The predominance requirement inquiry focuses on "the legal or factual ques-

tions that qualify each class member's case as a genuine controversy ...." *Amchem*, 521 U.S. at 623, 117 S.Ct. at 2249.

■■■ The claims remaining in this proposed class action are state law claims for breach of fiduciary duty, negligent misrepresentation, negligence, and deceptive trade practices. The proposed class consists of NCOs who purchased insurance policies in over forty-five states and countries.

Certification is sometimes denied because the application of the varying laws of many states complicate the proceedings and cause manageability problems. *See e.g. Andrews v. American Tel. and Tel. Co.*, 95 F.3d 1014 (11th Cir.1996)(court denied class certification in part because of the manageability problems inherent in applying the laws of fifty jurisdictions). While the court acknowledges that the prospect of dealing with the laws of so many different jurisdictions is daunting, that alone is not a reason to find that individual issues predominate. The court, however, does find that based on the state law claims and the plaintiffs' review of the applicable laws of the varying jurisdictions and their effect on the individual issues of reliance, damages, and individual representations, the class cannot be certified as requested by the plaintiffs because individual issues would predominate over common issues.

There are, however, several issues related to the plaintiffs' claims for breach of fiduciary duty, negligence and violation of the Georgia UDTPA, on which it could be possible for the court to certify the putative class. Rule 23(c)(4) states, "When appropriate, (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class ...." Fed.R.Civ.P. 23(c)(4)(A), (B). This provision allows a court to create subclasses and certify classes as to specific common issues and leave the remaining individual issues to be resolved in individual suits in other forums. The court can use one or both of these tools if to do so would serve Rule 23's purpose of achieving important and desirable advantages of judicial economy and efficiency. While the court finds in the instant matter

that it could certify several common issues for resolution as a class and create subclasses where appropriate, to do so would not be an efficient and economical use of judicial resources. Common issues such as whether the defendants owed a fiduciary or some other kind of duty to the plaintiffs, while capable of being resolved on a class-wide basis, would only be minimally helpful because the plaintiffs would still need to litigate the remaining issues, such as reliance and damages, related to their claims in other venues. The resolution of issues of the duties owed by the defendants would save the plaintiffs little or no time or cost in their individual suits.

As to the plaintiffs' claims for negligent misrepresentation, the court is unable to certify any of issues related to those claims. The court finds that even though the plaintiffs allege a uniform sales policy, the limited evidence before the court reveals that this "uniform scheme" may not have always, or ever, been used by the counselors. The defendants contend that the videos were but a few examples of how to recruit and sign up prospective NCOA members and customers for their insurance products. Because the common scheme does not appear to have been followed on a consistent basis, individual issues of whether a material fact was misrepresented to a particular class member and whether such class member detrimentally relied thereupon predominates over any common issues. *See Cohn v. Massachusetts Mutual Life Insurance Co.*, 189 F.R.D. 209 (D.Conn.1999); *see also Parkhill v. Minnesota Mutual Life Insurance Co.*, 188 F.R.D. 332 (D.Minn.1999). Therefore, the class also cannot be certified as to any issue relating to the plaintiffs' negligent misrepresentation claims.

(2) *Superiority*

 The court also finds that the adjudication of the several aforementioned issues is not superior to other available methods for the fair and efficient adjudication of the controversy. *See* Fed.R.Civ.P. 23(b)(3). While there are no other currently pending lawsuits that are related to this case and no apparent manageability problems, because the court,

at best, would have to limit this action to a class limited to finite issues, and possibly include a subclass limited to the Georgia UDTPA claim, the court finds that the resolution of any common issues in a class action through the use of a main class limited to a few issues and one subclass is not superior to the resolution of the plaintiffs' claims in either individual suits by the putative class members or a class action in each of the affected states, because of the efficiency and judicial economy issues discussed above.

### III. CONCLUSION

For the foregoing reasons, the court hereby DENIES the plaintiffs' motion to certify the class [Doc. No. 44–1]; DENIES the defendants' motions for oral argument [Doc. Nos. 63–1; 115–1]; GRANTS the plaintiffs' motions to exceed page limitations [Doc. Nos. 66–1; 120–1] nunc pro tunc; and DENIES the plaintiffs' motions to strike the defendants' memorandum [Doc. Nos. 69–1; 123–1].