**David Henry WALTERS, Plaintiff,**

v.

**The CITY OF ANDALUSIA, et al., Defendants.**

**No. Civ.A. 98–D–540–N.**

United States District Court, M.D. Alabama, Northern Division.

Feb. 16, 2000.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is the Motion For Summary Judgment filed on December 9, 1999, by Defendants City of Andalusia, James E. Beaman and Kenny Wheeler ("City," "Beaman" and "Wheeler," respectively, "City Defendants," collectively). The City Defendants filed a Brief In Support ("City Br.") on December 9, 1999 and a Supplemental Submission on December 10, 1999. Plaintiff David Henry Walters ("Plaintiff") filed a Response ("Resp. To City Mot.") on December 29, 1999. The City Defendants filed a Reply Brief ("City Reply") on January 5, 2000.

Also before the court is the Motion For Summary Judgment, filed December 21, 1999, by Defendants Edward Pace, Debra Pace and O.L.S., Inc./American Forum Publishing, Inc. ("Mr. Pace," "Mrs. Pace," "O.L.S.," respectively, "Pace Defendants," collectively). The Pace Defendants filed a Memorandum Brief ("Pace Br.") and Evidence In Support Of Motion For Summary Judgment on December 22, 1999. Plaintiff filed a Response ("Resp. To Pace Mot.") on January 18, 2000. The Pace Defendants filed a Reply ("Pace Reply") on January 25, 2000. Plaintiff filed a Supplement To Plaintiff's Response on February 14, 2000.

After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that the City Defendants' Motion For Summary Judgment is due to be granted in part and denied in part. The court further finds that the Pace Defendants' Motion For Summary Judgment on Plaintiff's federal claims against them is due to be granted and that Plaintiff's state law claims against the Pace Defendants are due to be dismissed without prejudice.

## JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 (federal question

John S. Hooper, Montgomery, AL, for plaintiff.

Allison L. Alford, Montgomery, AL, for defendants.

jurisdiction), 42 U.S.C. § 1983 (The Civil Rights Act of 1871, as amended) and 28 U.S.C. § 1367 (supplemental jurisdiction). The Parties do not contest personal jurisdiction or venue.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court construes the evidence and factual inferences in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). As the Supreme Court has explained:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing FED.R.CIV.P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (citing FED. R.CIV.P. 56(c)). The mechanics of satisfying the initial burden vary depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." FED. R.CIV.P. 56(e); *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

In 1994, Mr. and Mrs. Pace formed O.L.S., in part, for the purpose of publishing a newspaper called *The Covington*

*Times–Courier* ("*Covington Times*"). (Pl.'s Dep. at 54; Mr. Pace Aff. at 1.) Thereafter, Mr. Pace, the President of O.L.S., hired Jim Walker ("Walker") as the editor of the *Covington Times*. (*Id.* at 54.) The *Covington Times* was a weekly newspaper published in Andalusia, Alabama. (Mr. Pace Aff. at 1.)

On May 9, 1996, Mr. Pace sold the publishing rights to the *Covington Times* to Walker as President of E.M.A.X. Publications ("E.M.A.X."). (Pl.'s Dep. at 278; City Br., Ex. 2; Mr. Pace Aff. at 1.) The conditions of sale are embodied in a Contract For Sale Agreement ("Contract"). (City Br., Ex. 2.) The Contract provides that "O.L.S. [ ] agrees to rent the rights, along with all privileges and copyrights, including but not limited to, the [*Covington Times*]," to E.M.A.X. (*Id.*) The rent provisions of the Contract require E.M.A.X. to pay a non-refundable $5,000 down payment and monthly payments of $600 for a term of sixty months. (*Id.*) The Contract also contains two options to purchase, once after twelve months and again after sixty months. (*Id.*)

Shortly after Walker entered into the Contract, he was injured in an automobile-train collision. (Pl.'s Dep. at 53, 61–62, 277; Walker Aff. ¶ 4.) The injuries he sustained from the collision rendered him "physically unable" to continue publishing the *Covington Times*. (Walker Aff. ¶ 4.)

Plaintiff, who is Walker's cousin, expressed an interest in taking over the publication of the *Covington Times*. Walker agreed, and thus, in June 1996, Plaintiff and Walker entered into an Assignment Of Contract Or Agreements ("Assignment") (Pl.'s Dep. at 51, 277; City Br., Ex. 1;

Walker Aff. ¶ 5.) The Assignment provides that Walker, doing business as E.M.A.X., "irrevocably set[s] over and assign[s] all [his] right[s], title and interest" in the Contract to Plaintiff. (City Br., Ex. 1.) Under the Assignment, Plaintiff agreed to pay $5,500 "less all outstanding payables due from June 1, 1996 to date." (*Id.*)

According to Plaintiff, the Assignment and Contract allowed him to use the Pace's office to publish the *Covington Times* and transferred "ownership" to Plaintiff of all "files and equipment" of the *Covington Times*.[1] (Pl.Aff.¶ 4.) The Pace's office was located on East Three Notch Street in Andalusia, Alabama. (*Id.* ¶¶ 4, 7.) Plaintiff intended to use the Pace's office temporarily before moving the operation of the *Covington Times* to a rented office on 201 South Three Notch Street. (*Id.* ¶ 4; Walker Aff. ¶¶ 3, 8.)

Plaintiff published his first and only edition of the *Covington Times* on June 26, 1996. (Pl.Aff.¶ 6.) In this edition, he wrote an editorial criticizing the City's mayor and chief of police about the "reconstruction of the town square," which had become a "controversial issue." (*Id.;* O'Neal Aff. ¶¶ 3–4.[2]) In the same editorial, Plaintiff also "suggested" that the chief of police resign.[3] (Pl.Aff.¶ 6.) At all pertinent times to this action, the mayor was Paul Armstrong, and the chief of police was Jerry Williamson. (Mayor Aff. ¶ 1; Chief of Police Aff. ¶ 1.)

As a result of this editorial, the Paces "became hostile" and on June 27, 1996 "ordered" Plaintiff "out of their office," where the *Covington Times* was published. (*Id.* ¶ 7.) Although Plaintiff left at that

---

1. To the contrary, Mr. Pace states that "all" Walker (and now Plaintiff) received through the Contract "were the publishing rights to use the" newspaper's name and the subscription list, as well as the accounts receivable if the option to purchase was exercised. Neither Walker nor Plaintiff through the Assignment "purchase[d]" or "obtain[ed]" ownership rights to any equipment or other tangible property per the [C]ontract." (Mr. Pace Aff. at 1–2.)

2. Duane O'Neal ("O'Neal") was a member of the Andalusia City Council.

3. According to Plaintiff, since moving to Covington County in 1980, he has had "an interest" in "city government and the management thereof." (Pl.Aff.¶¶ 1–2.) Thus, through the years, he has written "numerous" letters to the local newspapers "expres[ing]" his "opinion" about "city government." (*Id.* ¶¶ 2–3.) Several of these letters have been published. (*Id.* ¶ 3.)

time, he "came back" that night "when the office was closed." (*Id.*) Plaintiff did not have a key to the Pace's office.[4] (Pl.'s Dep. at 284.) However, he was able to enter the office through the back doors by sliding a piece of tin through a gap between the doors. By doing this, Plaintiff was able to dislodge a $2' \times 4'$ piece of wood, which was braced horizontally on the inside of the doors. (*Id.* at 102–105.) After entering, Plaintiff "removed all files and equipment [he] considered being part of the purchase of the [*Covington Times*]." (Pl.Aff.¶ 7.) Among the items Plaintiff took was a computer system used to publish the *Covington Times*. Plaintiff took the items to his rented office at 201 South Three Notch Street. (*Id.* ¶ 10.)

The next day, Mrs. Pace called Plaintiff and "demanded" that Plaintiff return the files and equipment. (*Id.* ¶ 8.) Plaintiff told Mrs. Pace that he "was not in possession of any of their property," only the property of *Covington Times*, which he claimed belonged to him. (*Id.*) However, Plaintiff told Mrs. Pace that, if he "had taken anything other than the property of [*Covington Times*, he] would return" it. (*Id.*) Plaintiff then discovered "mingled within the files, some receipts that may have been of a personal nature to the Paces." (*Id.* ¶ 9.) To avoid a confrontation, Plaintiff asked O'Neal to deliver these personal effects to the Paces. (Pl.Aff. ¶ 9; O'Neal Aff. ¶ 6.)

On June 29, 1996, Mrs. Pace "confronted" Plaintiff and "demanded" to "search through" the files and property which Plaintiff had taken. (Pl.Aff. ¶ 10; Mrs. Pace Aff. at 1.) Plaintiff refused. (Pl. Aff.¶ 10.) Mrs. Pace then "went to the Andalusia Police Department and reported the break in at [her and Mr. Pace's] business." (Mrs. Pace Aff. at 2.)

On June 29, 1996 at approximately 1:20 p.m., Beaman, an officer in the Andalusia Police Department's Detective Division, responded to a dispatch call made by the Paces. (Beaman Aff. ¶ 2.) Mrs. Pace told Beaman that Plaintiff "claimed to have made an agreement with [ ] Walker about taking over Walker's position as publisher of the newspaper." (Beaman Aff. ¶ 2.) However, according to the Paces, Plaintiff "had not produced any legal documentation to support his claim." (*Id.*) Further, the Paces said that Plaintiff "had removed a number of items" from their office, "including four personal credit cards, U.S. postage records, a Dell computer system valued at $9,000, Time–Out for Kids original artwork and United Features original artwork." (*Id.*) Further, the Paces said "that they had spoken with [Plaintiff] about returning the items" but that Plaintiff had said that " 'he was not going to return the property.' " (*Id.* ¶ 2.)

Around 10:10 p.m. that night, Beaman "was called by the on-duty Captain to respond to 201 South Three Notch Street to recover the stolen property." (*Id.* ¶ 3.) Beaman says that he intended to "interview" Plaintiff when he arrived. (*Id.*) He also says that for two reasons he did not obtain a warrant "prior to proceeding to the property at 201 South Notch Street." (*Id.*) First, he "had just learned of [Plaintiff's] location" and, second, Plaintiff "was alleged to be transporting the stolen property at that point in time." (*Id.*) When Beaman arrived, he says that the Paces "were on the scene" and "willing to sign a warrant." (*Id.*)

After speaking to the Paces, Beaman knocked on the front door of Plaintiff's office but no one answered. By that time Wheeler, a sergeant with the Andalusia Police Department, had arrived. Wheeler "joined" Beaman as Beaman "knocked twice" on the side door. (*Id.*) Plaintiff opened the door. Beaman says that he "identified [himself] as Detective James Beaman with the Andalusia Police Department" and that Plaintiff gave him "permission to enter the building." (*Id.* ¶ 4.) Bea-

---

4. Walker states that he would have given Plaintiff his key to the Pace's office, but the key was "lost" when Walker was involved in the automobile-train collision. (Walker Aff. ¶ 8.)

man then says that he read Plaintiff his Miranda rights, after explaining to Plaintiff that he was looking for "stolen computers and other missing items" from the Paces' office. (*Id.*)

According to Beaman, Plaintiff then complained of "being ill" and asked if his mother, who also was there, could get him some medicine. (*Id.*) After Plaintiff's mother returned, Beaman says he and Wheeler were outside "discussing" whether they should get "a tape to record the events" with Plaintiff. (*Id.* ¶ 5.) Suddenly, Plaintiff "slammed the door shut and locked it." (*Id.*) Beaman says that he heard Plaintiff's mother "crying out loudly" to Plaintiff to "please" open the door. (*Id.*) According to Beaman, Plaintiff's mother was "screaming" and there were "loud noises in the building." (*Id.*) Because "[i]t sounded like she was being thrown around," Beaman says that Wheeler kicked in the door and the two of them entered. (*Id.*)

When Beaman and Wheeler entered, Beaman says that "all the lights had been turned off," so Wheeler left to retrieve a flashlight. (*Id.* ¶ 6.) A third officer arrived at the scene, and the three of them "made a room-to-room search" for Plaintiff. (*Id.*) Beaman then says he saw a white male "running," whom he believed to be Plaintiff, and that he yelled "stop." (*Id.*) However, "the subject kept running." (*Id.*) Wheeler then checked a bathroom door and discovered that it was locked. Beaman says that Wheeler "forced the door open" and that Plaintiff was "standing on a garbage can, attempting to climb into the ceiling." [5] (*Id.*)

Beaman ordered Plaintiff "to get on the floor." (*Id.* ¶ 7.) Plaintiff was then hand-

cuffed, after which Wheeler transported Plaintiff to the county jail. (*Id.*) After Wheeler left, Beaman says that he escorted the Paces into the building "to identify the stolen property," which they did.[6] (*Id.* ¶ 8.)

Plaintiff's version of the events immediately preceding his arrest is as follows. Plaintiff states that, around 10:00 p.m. on June 29, 1996, officers came to his office door.[7] (Pl.'s Dep. at 170.) When Plaintiff opened the door, Beaman and Wheeler "force[d] themselves into [his] office" without identifying themselves either by "name" or "as members of the Andalusia Police Department." (*Id.*) After Plaintiff identified himself, Beaman read him his Miranda rights. (*Id.*) When Plaintiff's mother asked Beaman "what he was doing," Beaman merely responded that he was taking "this man to jail." (*Id.*)

At this point, Plaintiff says he got "real upset" and his "stomach started having problems." (*Id.* at 171.) He then asked Beaman if he could go to his car to get some medicine he had left in there. Beaman said "no," but allowed Plaintiff's mother, accompanied by Wheeler, to retrieve the medicine. (*Id.*) When Wheeler and Plaintiff's mother returned from the car, Plaintiff says that Wheeler and Beaman stepped outside and were talking.

Plaintiff says that he then "panicked" and "closed" and "locked" the door. (*Id.* at 173.) Beaman and Wheeler "demand[ed]" that Plaintiff "open the door." (*Id.* at 188.) Plaintiff refused and says that he was trying to prevent his mother from opening the door. (*Id.* at 193–194.) The officers "batter[ed]" on the door for "some time." (*Id.* at 190, 194, 206.) During the "battering," Plaintiff's mother

---

**5.** One of the "ceiling tile[s]" had been removed and was on the floor. (*Id.*)

**6.** The Andalusia Police Department Property Release Form indicates that on this day, Beaman released to Mrs. Pace the following items which the Paces had identified in Plaintiff's office: (1) accounts payable, including credits cards issued by American Express, Amoco, AT & T Universal and Citibank Visa; (2) United

States postal records; (3) Time Out For Kids original artwork; (4) United Features Original Artwork; (5) Dell Computers; (6) Walker's golf clubs and personal effect; and (6) miscellaneous artwork. (Resp. To Pace's Mot., Ex. 4.)

**7.** After his arrest, Plaintiff learned that these officers were Beaman and Wheeler.

"tripped and fell," broke her arm and "yelled in pain." (*Id.*) At this point, the officers kicked in the door and Plaintiff "ran." (*Id.* at 206.) Plaintiff has not provided any evidence about what happened after he "ran." Rather, Plaintiff emphasizes that he was arrested without a warrant for theft and burglary, "taken to jail and held" until the next day. (Pl.Aff.¶ 11.)

On July 1, 1996, the Magistrate of the District Court of Covington County signed a warrant for Plaintiff's arrest for theft of property, first degree. (Resp. To Pace Mot., Ex. 4); ALA.CODE § 13A–8–3 (1994). The warrant was issued based on Mr. Pace's sworn Complaint and Beaman's Andalusia Police Department Warrant Application Form.[8] (Resp. To Pace Mot., Ex. 4.)

Also, on July 1, 1996, the mayor allegedly told O'Neal, in sum and substance, that "we won't have any more trouble from [Plaintiff]." (O'Neal Aff. ¶ 10.) Thus, Plaintiff believes that the City's mayor, as well as the chief of police, ordered his arrest and the seizure of his property in retaliation for Plaintiff printing the critical editorial about them. (Pl.Aff.¶ 15.) By ordering the alleged unconstitutional arrest and seizure, Plaintiff claims that the mayor and chief of police "terminate[d]" Plaintiff's ability to publish the *Covington Times.* (*Id.*)

> In response, the mayor states as follows: At no time did I influence anyone's decision to arrest [Plaintiff]. I was not aware that [Plaintiff] was arrested prior to the time of his arrest. I did not have any conversations with the [c]hief of [p]olice or anyone else associated with the Andalusia Police Department, suggesting at any time that [Plaintiff] should be arrested.

(Mayor Aff. ¶ 2.) Likewise, the chief of police says that "[a]t no time did" the mayor "or anyone else influence [him] to

arrest [Plaintiff]." (Chief of Police Aff. ¶ 2.) In fact, the chief of police states that he "was not aware that [Plaintiff] would be arrested prior to the time that members of the Andalusia Police Department arrested him." (*Id.*) Further, the chief of police says that the "decision" to arrest Plaintiff "was made independently" by Beaman and Wheeler without any "influence . . . in any way whatsoever" from him. (*Id.* ¶ 3.)

Furthermore, Beaman states that he had "no knowledge of ever having met [Plaintiff]" and did not know that Plaintiff had written a "critical article" about the mayor or a member of the police department. (Beaman Aff. ¶ 9.) Finally, Beaman asserts that the chief of police "never gave [him] any instructions to take any actions whatsoever with regard" to Plaintiff. (*Id.*)

On May 11, 1998, Plaintiff filed a five-count Complaint in the United States District Court for the Middle District of Alabama. The court allowed Plaintiff to amend his Complaint on February 16, 2000.[9] In Counts 1–3 of his First Amended Complaint, Plaintiff alleges constitutional deprivations of his First Amendment right to free speech and his Fourth Amendment rights to be free from unreasonable searches and seizures, as enforced by 42 U.S.C. § 1983 (" § 1983"). (Am. Compl.¶¶ 5–17.) In these three counts, Plaintiff refers to acts allegedly committed by both the Pace Defendants and the City Defendants. (*Id.*) He "demands judgment against [ ] Defendants, jointly and severally, in the sum of $5,000,000 as compensatory damages and $5,000,000 as punitive damages, attorney fees and costs." (*Id.* at 5–6.)

In Counts 4 and 5 of his First Amended Complaint, Plaintiff alleges state law claims for intentional interference with economic relations (Count 4) and conversion (Count 5). (*Id.* ¶¶ 18–26.) In these two counts, Plaintiff sets forth acts alleg-

---

8. Subsequently, Plaintiff's case was presented to the state Grand Jury in Covington County. However, the Grand Jury returned a no bill. (Pl.Aff. ¶ 14; Resp. To Pace Mot., Ex. 5.)

9. The court finds that Plaintiff's First Amended Complaint contains only minor revisions, not substantive in nature, which do affect or alter the causes of action alleged in this lawsuit or the issues argued on summary judgment.

edly committed by the Pace Defendants, *see infra* Section I.D. (*Id.*) He again "demands" $5,000,000 in compensatory damages, $5,000,000 as punitive damages, attorney fees and costs. (*Id.* at 7–8.)

## DISCUSSION

### I. The City Defendants' Motion For Summary Judgment

The City Defendants assert that they are entitled to summary judgment on Plaintiffs' constitutional claims asserted against them under § 1983,[10] as well as on Plaintiff's state law claims. (Am. Compl.¶¶ 5–17.) Specifically, the City Defendants contend that summary judgment is due to be entered in their favor for the following four reasons: (1) Plaintiff's § 1983 claims against Beaman and Wheeler in their official capacities merge into Plaintiff's § 1983 claims against the City (City Br. at 14); (2) Plaintiff has neither pleaded a claim nor submitted evidence establishing a theory of liability under which the City can be held accountable under § 1983 (*Id.* at 15–16); (3) Wheeler and Beaman are entitled to qualified immunity on Plaintiff's § 1983 claims against them in their individual capacities (*Id.* at 16–27); and (4) there are no allegations in Counts 4 and 5 against the City Defendants or any evidence supporting these claims against them. (*Id.* at 27–30.). The court will address each argument in turn.

### A. Plaintiff's § 1983 Claims Against Beaman And Wheeler In Their Official Capacities

The City Defendants assert that "[o]fficial capacity suits against [Beaman and Wheeler] are in essence suits against

the City." (City Br. at 14; City Reply at 2 n. 1.) Thus, they contend that Plaintiff's § 1983 claims against them in their official capacities are redundant of Plaintiff's § 1983 claims against the City. (*Id.*) Plaintiff has not addressed this contention. For the reasons that follow, the court agrees with the City.

When an officer is sued under § 1983 in his or her official capacity, the suit is simply "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). "Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents." *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir.1991). In *Busby,* the Eleventh Circuit affirmed the district court's dismissal of the plaintiff's § 1983 claims against the defendants in their official capacities. The Eleventh Circuit reasoned that the plaintiff's § 1983 lawsuit against both the City and its officers was redundant and may confuse a jury. *Id.* Based on the foregoing, the court finds that summary judgment is due to be granted on Plaintiff's § 1983 claims against Beaman and Wheeler in their official capacities, because Plaintiff also has brought his § 1983 claims against the City.

### B. Plaintiff's § 1983 Claims Against The City

The City Defendants contend that summary judgment is due to be granted in the City's favor for two reasons. First, they assert that Plaintiff has failed to plead a claim against the City under either the First or Fourth amendments.[11] (City Br.

---

**10.** Section 1983 provides that

[e]very person who, under color of a statute ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights," rather it provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan,* 443 U.S. 137, 144, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

**11.** The court notes that the City Defendants suggest that Plaintiff has failed to plead with specificity his § 1983 claims against the City. (City's Reply at 2.) The City Defendants cite *GJR Investments, Inc. v. County of Escambia, Fla.,* 132 F.3d 1359 (11th Cir.1998). (*Id.*) In

at 15; City Reply at 2–4.) Namely, the City Defendants emphasize that the City is neither specifically named in any Count in the Complaint nor is a municipal theory of liability set forth in any Count. (*Id.*) Rather, Plaintiff references the City only in a single paragraph in the "Jurisdiction And Venue" section of his First Amended Complaint.[12] (*Id.;* Am.Compl. ¶ 3.) Second, the City Defendants assert that, even construing this lone reference as stating a claim, Plaintiff has not presented any *evidence* to support a theory of liability against the City under either the First or Fourth amendments. (City Br. at 15.)

In response, Plaintiff contends that his injuries arise from an " 'official policy or custom of the municipality.' " (Resp. To City Mot. at 5–6.) Specifically, Plaintiff claims that the chief of police and the mayor have engaged in a "custom" of "taking retaliatory actions" against Plaintiff for his "past criticism" of them. (Resp. To City Mot. at 6; Pl.Aff. ¶ 15.) Further, Plaintiff asserts that his constitutional "rights have been violated at the direction of" the chief of police and mayor. (Resp. To City Mot. at 5; Pl.Aff. ¶ 15.) Namely, Plaintiff argues that the chief of police and mayor "ordered" Plaintiff's arrest and the seizure of his property, because Plaintiff was "openly critical" of them in the *Covington Times.* (Resp. To City Mot. at 5; Pl.Aff. ¶ 15.) For the reasons that follow, the court agrees with the City Defendants'

second argument and finds that Plaintiff has not set forth any evidence which establishes a theory of liability against the City under § 1983.[13]

▮ Under § 1983, there is no *respondeat superior* liability. Thus, a municipality may not be sued under § 1983 for the acts of others but, rather, only for its own acts. *Monell v. Dept. of Social Serv.,* 436 U.S. 658, 691–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107, (1988); *Floyd v. Waiters,* 133 F.3d 786, 793 (11th Cir.), *judgment vacated on another ground,* 525 U.S. 802, 119 S.Ct. 33, 142 L.Ed.2d 25 (1998).

▮ In *Brown v. City of Ft. Lauderdale,* 923 F.2d 1474 (11th Cir.1991), the Eleventh Circuit explained that a plaintiff can establish municipal liability under § 1983 in either one of two ways. First, liability may attach if a plaintiff demonstrates "a widespread practice that, 'although not authorized by written law or express municipal policy, causes a constitutional deprivation and is so permanent and well settled as to constitute a custom and usage with the force of law.' " *Id.* at 1481 (quoting *Praprotnik,* 485 U.S. at 127, 108 S.Ct. 915). Second, a plaintiff can establish a municipality's liability by showing that his or her alleged constitutional injury was caused by a person who "possess[ed] 'final authority to establish municipal poli-

---

*GJR Investments,* the Eleventh Circuit held that in § 1983 actions where government officials sued in their individual capacities raise the defense of qualified immunity, a plaintiff must plead his or claim with factual detail. *Id.* at 1367. However, the Supreme Court rejected a heightened pleading requirement for § 1983 claims asserted against municipalities. *See, Leatherman v. Tarrant County,* 507 U.S. 163, 166–68, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Thus, pursuant to Rule 8(a)(2) of the *Federal Rules of Civil Procedure,* Plaintiff is required only to plead a "short and plain statement of the claim showing that [he] is entitled to relief." FED.R.CIV.P. 8(a)(2).

**12.** This paragraph states as follows:
> The City of Andalusia, Alabama, has in the past exhibited, in its dealings with its citi-

zens or employees, a deliberate indifference to the statutes and laws of the United States of America, and has exhibited a deliberate indifference to the rights, privileges and immunities accorded its citizens and employees by the United States Constitution. The conduct complained of in this complaint is the result of that same indifference the City of Andalusia, Alabama has exhibited in the past.
(Am.Compl.¶ 3.)

**13.** Accordingly, the court need not address the City Defendants' first argument and, thus, need not decide whether Plaintiff's First Amended Complaint states a claim against the City under Rule 8(a)(2) of the *Federal Rules of Civil Procedure, see supra* note 11.

cy with respect to the action ordered.'" *Id.* at 1480 (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)); *see also Jett v. Dallas Ind. Sch. Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Church v. City of Huntsville,* 30 F.3d 1332, 1337 (11th Cir.1994).

In opposing summary judgment, Plaintiff appears to predicate liability under both theories. In his Response, he argues both that a well-settled municipal custom or policy existed which caused his alleged injures and that the chief of police and the mayor, as final decisionmakers concerning the City's policy, "ordered" the alleged unconstitutional actions. (Resp. To City Mot. at 5–6; Pl.Aff. ¶ 15.) Thus, the court addresses these two theories.

### 1. A Constitutional Violation Caused By A Well–Settled Custom Or Policy

■ The court finds that Plaintiff has failed to demonstrate that the City had "a widespread practice" resulting in an unofficial, but well-settled, custom or policy of violating individual's rights under either the First or Fourth amendments. *Brown,* 923 F.2d at 1481. Plaintiff has not come forward with *any* evidence of a single prior incident of a similar nature, but relies solely on the alleged unconstitutional actions taken against·him on June 29, 1996. In other words, Plaintiff has offered no evidence that a longstanding and widespread practice existed on the part of the City to approve the illegal actions of its employees. This is not sufficient to establish municipal liability under § 1983. *See Church,* 30 F.3d at 1345; *Depew v. City of St. Marys, Georgia,* 787 F.2d 1496, 1499 (11th Cir.1986). Therefore, the court finds that Plaintiff has failed to establish the existence of an essential element on his theory that the City is liable based upon a citywide policy or custom. Accordingly, summary judgment is due to be granted on Plaintiff's § 1983 claims against the City on this theory of liability.

### 2. A Constitutional Violation Caused By A Final Policymaking Official

■ Likewise, the court finds that Plaintiff has failed to present any evidence to support his theory that one of the City's final decisionmakers caused the alleged unconstitutional actions. Under this theory of liability, a municipal policy may consist of a single edict or act by a municipal official with final policymaking authority: "Where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Pembaur,* 475 U.S. at 481, 106 S.Ct. 1292; *Brown,* 923 F.2d at 1481 (holding that, if one has final policymaking authority, that person's decisions are essentially the municipality's policy).

Assuming *arguendo,* without deciding, that both the chief of police and the mayor are final policymaking officials as to the alleged unconstitutional actions ordered, Plaintiff still cannot survive summary judgment.[14] Plaintiff has failed to show that either the chief of police or the mayor *caused* the alleged deprivation.

First, Plaintiff has offered absolutely no evidence that the chief of police "ordered" the alleged illegal action. (Resp. To City Mot. at 5; Pl.Aff. ¶ 15.) Second, regarding the mayor, the only evidence Plaintiff has proffered is the mayor's statement to O'Neal made after Plaintiff's arrest that "we won't have any more trouble from" Plaintiff. (O'Neal Aff. ¶ 10.) Assuming this statement to be true, the court cannot conceive of an inference to be drawn that

---

**14.** *See McMillian v. Monroe County,* 520 U.S. 781, 785–786, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) (quoting *Jett,* 491 U.S. at 737, 109 S.Ct. 2702) (In assessing whether a municipality can be liable under § 1983, the court's first task "is to 'identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.' ").

the mayor actually ordered the alleged unconstitutional conduct. *See WSB–TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir.1988) (At the summary judgment stage, "the evidence and inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party, and all reasonable doubts are resolved in his favor."). At most, this statement indicates the mayor's distaste for Plaintiff. Even assuming that the mayor hated Plaintiff and possessed an evil intent to violate Plaintiff's rights under the First and Fourth amendments, such hatred and intent are insufficient to establish causation. *See Macuba v. Deboer,* 193 F.3d 1316, 1321 (11th Cir.1999) (holding that a defendant's "intent" to violate one's constitutional rights or deep hatred for another is insufficient to state a § 1983 claim if the defendant did not have "anything to do with" the alleged unconstitutional conduct).

Here, Plaintiff has presented no evidence that either the chief of police or the mayor had "anything to do with" Plaintiff's arrest and/or the seizure of the property at issue. *Id.* In fact, the only evidence in the record is to the contrary. Namely, the chief of police and the mayor have submitted Affidavits in which they attest that they were not directly or indirectly involved with Plaintiff's arrest or the seizure of property from Plaintiff's office. (Chief of Police ¶¶ 2–3; Mayor Aff. ¶ 2.) Both make clear that they neither "influence[d]" nor suggested that Plaintiff be arrested.

(*Id.*) Further, both the chief of police and the mayor state that they did not even know about Plaintiff's arrest until after the fact. (*Id.*) Further still, Beaman confirms that he did not receive "any instructions" from the chief of police regarding Plaintiff on the day he arrested Plaintiff. (Beaman Aff. ¶ 9.) Plaintiff has failed to refute this evidence.

In sum, there is no evidence from which an inference can be drawn that the actions complained of were initiated or commanded by either the chief of police or the mayor. Plaintiff must do more than demonstrate that the chief of police and the mayor did not like him. Plaintiff must prove a "causal connection" between the chief of police and the mayor's alleged ill will toward Plaintiff and Plaintiff's arrest and the seizure of property from his office. *Macuba,* 193 F.3d at 1325. Accordingly, the court finds that summary judgment is due to be granted on Plaintiff's § 1983 claims against the City on the theory that a final policymaking official of the City ordered the alleged unconstitutional actions.

### C. Plaintiff's Claims Against Beaman And Wheeler In Their Individual Capacities

Under § 1983, Plaintiff also seeks to hold Beaman and Wheeler liable for monetary damages in their individual capacity.[15] Beaman and Wheeler contend that, in their individual capacities, they are im-

---

**15.** Initially, the court notes that Plaintiff has not specified in his First Amended Complaint that he is suing Beaman and Wheeler in their individual capacities. Where, as here, a complaint is not clear on this matter, the "course of proceedings" usually will signify the type of liability sought to be imposed. *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting *Brandon v. Holt,* 469 U.S. 464, 469, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985)). Courts considering the "course of proceedings" generally refer to arguments and defenses presented by the parties. *See Fitzgerald v. McDaniel,* 833 F.2d 1516, 1520 (11th Cir.1987) (raising and arguing the defense of qualified immunity suggests that the lawsuit was filed against the defendant in his or her individual capacity).

Here, the City Defendants have asserted qualified immunity as a defense to Plaintiff's § 1983 claims against Beaman and Wheeler in their individual capacities, plus their Motion For Summary Judgment focuses on this defense. Additionally, the City Defendants have not questioned Plaintiff's failure to designate the capacity in which he is suing Beaman and Wheeler. Thus, the court finds that the "course of proceedings" indicates that Plaintiff's lawsuit is against Beaman and Wheeler in their individual, as well as official, capacities. *Kentucky,* 473 U.S. at 167 n. 14, 105 S.Ct. 3099; *see also Hobbs v. Roberts,* 999 F.2d 1526, 1529 (11th Cir.1993).

mune from damages under the well-established doctrine of qualified immunity. (City Br. at 16–27.) The Supreme Court of the United States has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir.1988). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

The test for whether a governmental defendant is entitled to qualified immunity from liability in his or her individual capacity involves a two-step analysis. A government official first must demonstrate that " 'he [or she] was acting within the scope of his [or her] discretionary authority when the allegedly wrongful acts occurred.' "[16] *Rich,* 841 F.2d at 1563–64 (quoting *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983)). If a defendant satisfies this burden, the plaintiff must show either that the official's actions " 'violated clearly established constitutional law' " or a federal statute. *Id.* At the summary judgment stage, the second prong "itself has two subparts: first, whether the applicable law was clearly established at the time of the governmental action; and second, whether a genuine issue of fact must be resolved to determine if the government official's conduct violated clearly established law." *Eubanks v. Gerwen,* 40 F.3d 1157, 1160 (11th Cir.1994).

▉▉▉ Moreover, in determining whether the applicable law was clearly established at the time of the challenged action,

courts must look to decisions of the Supreme Court of the United States, the Court of Appeals for the Eleventh Circuit and, in this case, the Supreme Court of Alabama. *D'Aguanno v. Gallagher,* 50 F.3d 877, 881 n. 6 (11th Cir.1995); *Courson v. McMillian,* 939 F.2d 1479, 1498 n. 32 (11th Cir.1991). The relevant inquiry is "fact specific," *Rodgers v. Horsley,* 39 F.3d 308, 311 (11th Cir.1994), and a plaintiff must point to a controlling case, decided before the events at issue, that establishes a constitutional violation on "materially similar" facts. *Lassiter v. Alabama A & M Univ., Bd. of Trustees,* 28 F.3d 1146, 1150 (11th Cir.1994); *see also Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (holding that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right"). Absent a controlling and factually on-point case, a plaintiff can overcome qualified immunity only when "the official's conduct lies so obviously at the very core" of what the constitutional provision forbids so "that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw." *Smith v. Mattox,* 127 F.3d 1416, 1419 (11th Cir.1997) (citing *United States v. Lanier,* 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)).

With these principles in mind, the court turns to Plaintiff's three constitutional claims to determine whether Plaintiff's claims survive Beaman and Wheeler's defense of qualified immunity.

### 1. First Amendment Retaliation Claim (Count 1)

In Count 1, Plaintiff asserts that Beaman and Wheeler arrested him and seized his property in retaliation of his First

---

**16.** None of the Parties have argued that either Beaman or Wheeler was not acting within his discretionary authority on June 29, 1996 when Plaintiff was arrested and items were seized from his office. Thus, the court finds that the first element under the qualified immunity analysis is satisfied. *See Godby v.*

*Montgomery Co. Bd. of Educ.,* 996 F.Supp. 1390, 1400 (M.D.Ala.1998) (finding that the determination that an officer was acting within his or her discretionary authority is a "low hurdle" to clear). Therefore, the court need only focus its analysis on the contested second prong.

Amendment rights to free speech, namely, his First Amendment right to publish an article criticizing the City government. (Am.Compl.¶¶ 5–13.) However, for the reasons that follow, the court finds that Plaintiff has failed to allege facts sufficient to support a First Amendment retaliation claim against Beaman and Wheeler.[17]

■ An essential element of a First Amendment retaliation claim is the existence of a retaliatory motive. *See Crawford–El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). To survive summary judgment, "[t]he plaintiff must present specific, nonconclusory factual allegations that establish improper motive and must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the improper motive." *Brown v. Cochran,* 171 F.3d 1329, 1332 (11th Cir. 1999); *see also Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir.1995) ("Mere conclusory allegations of retaliation will not withstand a summary judgment challenge. The [plaintiff] must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.' ").

■ The court finds that the element of a retaliatory motive on the part of Beaman and Wheeler is conspicuously absent in this case. First, there is no direct evidence in the record demonstrating that either Beaman or Wheeler was aware of the editorial published by Plaintiff. Indeed, the direct evidence regarding Beaman is that he did not know that Plaintiff had printed a "critical article" about the mayor. (Beaman Aff. ¶ 9.) Second, Plaintiff has not presented any evidence from which the court can infer knowledge. In sum, the court has found no evidence "in the record that supports a finding of illegal motivation." *Fowler v. Smith,* 68 F.3d 124, 126 (5th Cir.1995). Absent evidence of a retaliatory motive, Plaintiff's First Amendment retaliation claim must fail. Accordingly, the court finds that summary judgment is due to be entered on Plaintiff's First Amendment retaliation claim against Beaman and Wheeler in their individual capacities.[18]

### 2. Fourth Amendment False Arrest Claim (Count 2)

The court turns to Beaman and Wheeler's qualified immunity defense in the context of Plaintiff's false arrest claim. (Am. Compl.¶¶ 14–15.) Namely, Plaintiff claims that, at the hands of Beaman and Wheeler, he suffered a "false arrest ... without arguable probable cause." (*Id.* ¶ 15.)

■ In the context of qualified immunity, the Eleventh Circuit has set out the parameters for examining Plaintiff's claim:

It is clearly established that an arrest made without probable cause violates the Fourth Amendment. An officer is entitled to qualified immunity, however, where the officer had "arguable probable cause," that is, where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest" the Plaintiffs.

*Redd v. City of Enterprise, Alabama,* 140 F.3d 1378, 1381 (11th Cir.1998); *see also Swint v. City of Wadley,* 51 F.3d 988, 995 (1995) ("We look to ... the information possessed by the official at the time the conduct occurred."). Probable cause to ar-

---

17. Under the qualified immunity analysis, the Supreme Court has stated that "[a] necessary concomitant to the determination of whether the constitutional right or federal statutory right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley,* 500 U.S. 226, 232, 111

S.Ct. 1789, 114 L.Ed.2d 277 (1991); *see also Wooten v. Campbell,* 49 F.3d 696, 699 (11th Cir.1995).

18. Thus, the court need not determine whether Beaman and Wheeler are entitled to summary judgment on the basis of qualified immunity. *See Eubanks,* 40 F.3d at 1161 n. 2.

rest depends "'upon whether, at the moment the arrest was made ... the facts and circumstances within (the arresting officers') knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Additionally, a warrantless entry into a building on private property to effectuate an arrest is permissible, where the probable cause is accompanied by exigent circumstances. *See Warden v. Hayden*, 387 U.S. 294, 298, 87 S.Ct. 1642, 18 L.Ed.2d 782, (1966). Exigent circumstances exist "when the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." *United States v. Satterfield*, 743 F.2d 827, 844 (11th Cir.1984).

The first issue is whether, based on the information possessed by Beaman and Wheeler, arguable probable cause existed for Plaintiff's arrest for burglary in the third degree or theft of property in the first degree. (Beaman's Aff. ¶ 7.) In other words, could Beaman and Wheeler have reasonably believed that Plaintiff had committed either of these crimes? *See Redd*, 140 F.3d at 1381. In deciding this issue, the court "must view the facts in the light most favorable to" Plaintiff. *Hardin v. Hayes*, 957 F.2d 845, 848 (11th Cir.1992).

The two relevant Alabama statutes provide as follows: (1) "[a] person commits the crime of burglary in the third degree if he knowingly enters or remains unlawfully in a building with intent to commit a crime therein," ALA.CODE § 13A–7–7 (1994); and (2) "[t]he theft of property which exceeds $1,000.00 in value, or property of any value taken from the person of another, constitutes theft of property in the first degree." ALA.CODE § 13A–8–3 (1994); (Resp. To Pace Mot., Ex. 5.) These two offenses are felonies.[19] *Id.*

In turning to the facts, there is no dispute about the information Beaman and Wheeler possessed when Plaintiff was arrested. Beaman and Wheeler were relying primarily on the information provided by the Paces.[20] The uncontroverted evidence is that the Paces reported to Beaman that Plaintiff, without permission, broke in their office after hours and stole items from their business, including among other

19. It is undisputed that Plaintiff was arrested without a warrant. However, warrantless arrests are not *per se* unconstitutional. *See Gerstein v. Pugh*, 420 U.S. 103, 113, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (Although requiring warrants for all arrests could assure "[m]aximum protection of individual rights ... such a requirement would constitute an intolerable handicap for legitimate law enforcement."). In certain circumstances, law enforcement officers may lawfully arrest individuals without a warrant. For example, the Supreme Court has established that warrantless arrests are permitted if an officer has probable cause to believe the suspect has committed a felony, even if the felony was not committed in the officer's presence. *See United States v. Watson*, 423 U.S. 411, 421 n. 11, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *Carroll v. United States*, 267 U.S. 132, 156, 161–162, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Moreover, the court notes that Alabama law provides that "[a]n officer may arrest a person without a warrant, on any day and at any time" for a felony in the following circumstances: (1) "[w]hen a felony has been committed, though not in the presence of the officer, by the person arrested";

(2) "[w]hen a felony has been committed and the officer has reasonable cause to believe that the person arrested committed the felony"; and (3) "[w]hen the officer has reasonable cause to believe that the person arrested has committed a felony, although it may afterwards appear that a felony had not in fact been committed." ALA.CODE § 15–10–3 (1995).

20. Plaintiff asserts that the Paces gave Beaman false information. (Resp. To Pace Mot. at 1–4.) For instance, Plaintiff states that the Paces lied when they told Beaman that they owned the computer system at issue. (*Id.* at 3.) However, while the truth and veracity of the Paces' statements to Beaman is in dispute, the court finds that this dispute is not material to resolving the issue before the court on summary judgment. In determining whether "arguable probable cause" existed, the court must examine the facts known to Beaman and Wheeler at the time of Plaintiff's arrest. *See Redd*, 140 F.3d at 1381. The inquiry is whether the information relied on contained sufficient indicia of reliability, *see infra* at 1281.

things, a $9,000 computer system. The Paces further told Beaman that they had asked Plaintiff to return the property but that Plaintiff had refused. (Beaman Aff. ¶ 2.) Plaintiff does not argue that these facts, if true, would not constitute a violation of either § 13A–7–7 or § 13A–8–3 of the Code of Alabama. Rather, Plaintiff argues, in sum and substance, that these facts are unreliable. Namely, Plaintiff contends that his arrest was made based solely on a citizen complaint and "without a proper investigation." (Resp. To City Mot. at 6.) Thus, according to Plaintiff, even arguable probable cause was lacking. (*Id.*; Am.Compl. ¶ 15.)

The court, however, finds that the facts which Beaman and Wheeler were apprised of at the time of the arrest gave them, at a minimum, arguable probable cause to arrest Plaintiff. In order for a complainant's unsworn accusation to provide a basis for probable cause, the information must contain a sufficient indicia of reliability. *See generally Alabama v. White,* 496 U.S. 325, 328–31, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *see also United States v. Taylor,* 797 F.2d 1563, 1564 (11th Cir.1986) (holding that "[r]easonable cause existed for arresting" the defendant "where a truck driver notified the arresting officer … that the person driving [the defendant's] truck had fired several shots at him," "[t]he truck driver furnished a detailed description of the truck" and "identified the truck when he and [the arresting officer] passed it on the interstate"); *Goodson v. City of Atlanta,* 763 F.2d 1381 (11th Cir.1985) (holding that an alleged rape victim's identification of the suspect as the man who raped her and her description of rapist in file provided officers with probable cause to arrest suspect). The court finds that the Pace's information was supported by a sufficient indicia of reliability to establish arguable probable cause. The

Paces identified specific equipment in their office that was allegedly stolen and were able to provide information connecting Plaintiff to the alleged burglary and theft. Namely, when Mrs. Pace confronted Plaintiff about the property, he admitted that he had taken it and refused to return it. Thus, the Paces had firsthand knowledge from Plaintiff that he had in fact removed the property from their office. Additionally, when Beaman arrived at the scene, the Paces were there and reasserted and confirmed the facts that they had reported to Beaman earlier that day.[21]

Also, once Beaman and Wheeler were at the scene, an additional factor arose which adds to the court's finding of arguable probable cause. Plaintiff attempted to flee. "Flight from law officers is evidence of guilt." *Monnette v. United States,* 299 F.2d 847, 851 (5th Cir.1962)[22]; *Johnson v. Middlebrooks,* 383 F.2d 386, 387 (5th Cir. 1967) ("Flight of the accused alone will not suffice to create probable cause for arrest, but is a factor to be considered."); *United States v. Herzbrun,* 723 F.2d 773, 777 (11th Cir.1984). Shortly after Beaman told Plaintiff the charges for which he was arresting him, Plaintiff "slammed the door" and locked it. (Pl.'s Dep. at 173.) Again, when Plaintiff was finally located in the house, he appeared to the officers to be trying to escape through the ceiling. (Beaman Aff. ¶ 6.) In light of this undisputed evidence, the court finds that a reasonable officer could view Plaintiff's actions as flight. Therefore, based on the foregoing facts, the court finds that arguable probable cause existed for the arrest of Plaintiff.

■ The second issue is whether the warrantless entry into Plaintiff's office was justified. For the following three reasons, the court finds that, for purposes of qualified immunity, exigent circumstances were

---

**21.** The court emphasizes that the more professional course of action would have been for Beaman and Wheeler to obtain a warrant by having the Paces, as the complaining witnesses, swear out a Complaint before a disinterested judicial officer.

**22.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

present. First, "flight" and "escape" are "recognized situations in which exigent circumstances exist." *United States v. Reid,* 69 F.3d 1109, 1113 (11th Cir.1995). Once Plaintiff slammed the door and locked it, the court finds that Beaman and Wheeler, already having arguable probable cause for the arrest, could complete the arrest by following Plaintiff into his office. *See United States v. Jones,* 149 F.3d 715, 716 (7th Cir.1998) (Law enforcement officers "who espy a suspect in the frame of a front door have found the suspect in a public place and therefore may follow the suspect into the interior of the house as part of hot pursuit even without a warrant.") (citing *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976)).

Second, once Plaintiff exhibited flight behavior, the court finds that Beaman and Wheeler reasonably could have feared that Plaintiff would destroy or remove the alleged stolen property. *See Reid,* 69 F.3d at 1113; *United States v. Mikell,* 102 F.3d 470, 475 (11th Cir.1996) ("Exigent circumstances arise when authorities have reason to believe that evidence is in danger of being destroyed or removed."). Third, the court finds that exigent circumstances for the warrantless entry arose when Plaintiff and his mother began screaming at one another and Plaintiff's mother fell. (Beaman ¶ 5; Pl.'s Dep. at 190, 194, 206.) Officers may make a warrantless entry "if they believe that ... the lives of others are at risk." *United States v. Wicks,* 995 F.2d 964, 970 (10th Cir.1993). Based on the screams and the sound of Plaintiff's mother falling, the court finds that Beaman and Wheeler reasonably could have believed that the "safety" of Plaintiff's mother was in danger. (Beaman ¶ 5.)

In sum, the court finds that, based on the circumstances with which Beaman and Wheeler were confronted on June 29, 1996, it was not "clearly established" that "probable cause and exigent circumstances" were not present. *Anderson,* 483 U.S. at 639–41, 107 S.Ct. 3034. Accordingly, the court finds that Beaman and Wheeler are entitled to qualified immunity in their individual capacities on Plaintiff's Fourth

Amendment false arrest claim brought under § 1983. Thus, summary judgment is due to be granted on Plaintiff's § 1983 Fourth Amendment false arrest claim against Beaman and Wheeler in their individual capacities.

### 3. Fourth Amendment Unreasonable Seizure Of Property (Count 3)

In support of his claim alleging a Fourth Amendment unreasonable seizure of property, Plaintiff asserts that, after he was arrested, "the evidence at the scene was given to the accusers of the crime without a further investigation as to the possibility that [ ] Plaintiff was innocent and the accusers were acting improperly." (Resp. To City Mot. at 7.) In response, the City Defendants assert that Wheeler is entitled to summary judgment because "there is no evidence that he participated in the seizure of any of the property." (City Br. at 24.) The City Defendants further argue that Beaman is entitled to qualified immunity because "a reasonable officer, possessing the knowledge of [ ] Beaman at that time, would have concluded that the seizure of the items in question was reasonable under the circumstances." (*Id.*)

#### i. Wheeler

The issue Wheeler has raised is whether Plaintiff has demonstrated "a violation of a constitutional right at all." *Siegert,* 500 U.S. at 232, 111 S.Ct. 1789; *see also Wooten,* 49 F.3d at 699. The court finds that Plaintiff has not presented evidence sufficient to establish a Fourth Amendment unreasonable seizure of property claim against Wheeler.

"Without participation in the seizure, there is simply no deprivation, or seizure ... at all." *Williams v. Goldsmith,* 4 F.Supp.2d 1112, 1125–26 (M.D.Ala.1998). Here, the evidence is undisputed that, once Plaintiff was arrested, Wheeler transported Plaintiff to the city jail. (Pl.Aff. ¶ 11; Beaman Aff. ¶ 8.) The evidence is further undisputed that the seizure of the property at issue occurred after Plaintiff had left the premises with Wheeler. (Beaman ¶ 8.)

Because Plaintiff has not established Wheeler's presence at the scene, the court finds that Plaintiff has failed to connect Wheeler to the alleged unconstitutional violation.

In addition to the absence of evidence of Wheeler's personal presence and participation at the scene, there is no evidence that Wheeler was connected in any other manner. For example, there is no evidence that Wheeler served in a supervisory role over Beaman and that, in that capacity, "instructed or passively allowed" Beaman to seize the property at issue. *Williams,* 4 F.Supp.2d at 1126; *see also Hill v. Dekalb Regional Youth Detention Center,* 40 F.3d 1176, 1192 (11th Cir.1994) ("To recover individually from [state officials] who were in supervisory or policy-making capacities, the [plaintiff] must show that [the supervisors] are liable either through their 'personal participation' in the acts comprising the alleged constitutional violation or 'the existence of a causal connection' linking their actions with the violation."). Indeed, no facts exist that Wheeler even had any knowledge that Beaman was going to seize the property. Based on the foregoing, the court finds that summary judgment is due to be granted on Plaintiff's § 1983 Fourth Amendment unlawful seizure of property claim against Wheeler in his individual capacity.[23]

### ii. Beaman

The court finds that Beaman is not entitled to qualified immunity on Plaintiff's Fourth Amendment unreasonable seizure of property claim. For qualified immunity

purposes, the question is: Whether it was clearly established on June 29, 1996, that, after effectuating a warrantless arrest (based on arguable probable cause) of Plaintiff in his office, may Beaman who also possesses arguable probable cause to search but who has no warrant, then search Plaintiff's office without Plaintiff's consent and absent any facts demonstrating that exigent circumstances existed?[24] The answer is "Yes."

 "A warrantless search is presumptively unreasonable." *United States v. McGregor,* 31 F.3d 1067, 1068 (11th Cir. 1994). "A search without a warrant based on probable cause is illegal, unless" exigent circumstances exist or the subject consents to the search. *United States v. Campbell,* 920 F.2d 793, 795 (11th Cir. 1991); *Steagald v. United States,* 451 U.S. 204, 206, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981) ("[W]arrantless searches" are unreasonable "absent consent or exigent circumstances. . . .").

 In other words, "when probable cause exists, 'if exigent circumstances' make it impossible or impracticable to obtain a warrant," the warrant requirement "will be excused."[25] *Id.; see also Swint,* 51 F.3d at 998. "Recognized situations in which exigent circumstances exist include: danger of flight or escape; danger of harm to police officers or the general public; risk of loss, destruction, removal, or concealment of evidence; and 'hot pursuit' of a fleeing suspect." *Reid,* 69 F.3d at 1113.

First, there is no evidence in this case that Plaintiff consented to the search.

---

**23.** Thus, the court need not determine whether Wheeler is entitled to summary judgment on the basis of qualified immunity. *See Eubanks,* 40 F.3d at 1161 n. 2.

**24.** The court assumes for the limited purpose of ruling on the City Defendants' Motion For Summary Judgment that, in addition to having arguable probable cause to arrest, Beaman had arguable probable cause to believe that the alleged fruits of the crime(s) were in Plaintiff's office. Also, the court notes that it is undisputed that Beaman did not seize the alleged stolen property until after Plaintiff

had been arrested and was no longer at the office. It is further undisputed that Beaman did not obtain a search warrant prior to the seizure. (Beaman Aff. ¶¶ 3, 8.)

**25.** *See also Minnesota v. Dickerson,* 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) ("Time and again, this Court has observed that searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment-subject only to a few specifically established and well delineated exceptions.").

Second, once Plaintiff had been arrested, no sense of urgency or exigency remained which would mitigate the failure of Beaman to obtain a search warrant. The record is devoid of any evidence demonstrating that a single *Reid* factor was present. There simply is no evidence in the record that Plaintiff consented to the search or that any exigent circumstance existed, or even arguably existed, at the time of the seizure.[26] In short, Beaman should have secured the premises and obtained a warrant.

Viewing the facts in the light most favorable to Plaintiff, the court finds that "a reasonable jury could" find that Beaman's warrantless search was not justified by either consent or exigent circumstances and, thus, was in violation of Plaintiff's right to be free from unreasonable seizures. *Ortega v. Schramm,* 922 F.2d 684, 695 (11th Cir.1991). In other words, a reasonable jury could find that Beaman's "conduct lies so obviously at the very core" of what the Fourth Amendment forbids "that the unlawfulness of the conduct was readily apparent to [Beaman]." *Smith,* 127 F.3d at 1419. Therefore, the court finds that Beaman is not entitled to qualified immunity on Plaintiff's § 1983 Fourth Amendment unreasonable seizure claim and that the City Defendants' Motion For Summary Judgment is due to be denied on this claim against Beaman in his individual capacity.

### D. State Law Claims

In urging the court to grant summary judgment in their favor, the City Defendants assert that there are no allegations against them in Counts 4 and 5. (City Br. at 27–29.) The court agrees that the City Defendants are not named as Defendants in these two Counts.

"It is axiomatic that a plaintiff can collect damages under a count only where the defendants are named as responsible parties." *Barrett v. City of Allentown,* 152 F.R.D. 50, 54 (E.D.Pa.1993). Counts 4 and 5 set forth state law claims for intentional interference with economic relations (Count 4) and conversion (Count 5). (Am. Compl.¶¶ 18–26.) Neither Counts 4 nor 5 contain any allegation of wrongdoing by the City Defendants. Rather, Plaintiff expressly states that his injuries were "a direct and proximate consequence" of the Pace Defendants' conduct. (*Id.* ¶¶ 21, 25.) The City Defendants are not mentioned.

However, the court cannot grant summary judgment on a nonexistent claim as requested by the City Defendants. Rather, the court finds that the City Defendants' Motion For Summary Judgment on Plaintiff's state law claims is due to be denied as moot.[27]

### II. The Pace Defendants' Motion For Summary Judgment

#### A. § 1983 Claims

■ In moving for summary judgment on Counts 1, 2 and 3 of Plaintiff's Complaint, the Pace Defendants argue that as "private citizens" they are not "persons" as defined under § 1983. (Pace Br. at 7.) Plaintiff has not addressed the Pace Defendants' argument in his response. For the reasons that follow, the court finds that Plaintiff has abandoned his claims in Counts 1, 2 and 3 against the Pace Defendants.

---

**26.** The court also notes that there is no evidence indicating that the property Beaman seized was in "plain view," another exception to warrant requirement. *See Minnesota,* 508 U.S. at 375, 113 S.Ct. 2130 ("The rationale of the plain view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no search independent of the initial intrusion that gave the officers their vantage point."); (Beaman Aff. ¶ 8).

**27.** The City Defendants also assert that Beaman and Wheeler are entitled to "discretionary function" immunity pursuant to § 6–5–338 of the Code of Alabama and that the City is entitled to absolute immunity under § 11–47–190 of the Code of Alabama. (City. Br. at 27–30; Reply at 10–13.) In finding that Plaintiff has not stated a claim against the City Defendants, the court need not address these arguments.

In opposing summary judgment, Plaintiff cannot rest on his pleadings. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (citing FED. R.CIV.P. 56(e)). In other words,

> [t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995).

In moving for summary judgment, the Pace Defendants have filed a fully-briefed Memorandum Brief and evidentiary submissions, including affidavits and deposition excerpts. After a careful examination of the Pace Defendants' Motion For Summary Judgment, the court finds that they have met their burden of informing the court of the basis for their Motion and of establishing, based on the evidence, that no genuine issue of material fact exists on Plaintiff's § 1983 claims against the Pace Defendants. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. (citing FED.R.CIV.P. 56(c)).

In response to said Motion, Plaintiff addresses only issues regarding Counts 4 and 5, the state law claims. In fact, Plaintiff's sole argument in response to the Pace Defendants' Motion is that the facts "support[ ] counts four and five" against the Pace Defendants. (Resp. To Pace Mot. at 4.) Therefore, the court finds that Plaintiff has abandoned all claims, except Counts 4 and 5, and that Plaintiff has not met his burden on summary judgment of "go[ing] beyond the pleadings" and demonstrating "'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (citing FED. R.CIV.P. 56(e)). Accordingly, the court finds that the Pace Defendants' Motion For Summary Judgment is due to be granted on Counts 1, 2 and 3 of Plaintiff First Amended Complaint against the Pace Defendants.

### B. State Law Claims

In Counts 4 and 5 of the Complaint, Plaintiff alleges state law claims against the Pace Defendants for conversion and intentional interference with economic relations. (Am.Compl.¶¶ 18–26.) In granting summary judgment on the federal § 1983 claims against the Pace Defendants, the issue becomes whether the court has subject matter jurisdiction over these two state law claims.

Although diversity jurisdiction undisputedly does not exist between Plaintiff and the Pace Defendants, *see* 28 U.S.C. § 1332, the court exercises original jurisdiction over Plaintiff's remaining federal claim against Beaman. *See* 28 U.S.C. § 1331. Therefore, the court can exercise subject matter jurisdiction over Plaintiff's state law claims against the Pace Defendants only through "pendent party" jurisdiction. *See* 28 U.S.C. § 1367. Section 1367(a), which codifies the doctrine of pendent party jurisdiction, provides in relevant part that:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).

To come within the ambit of § 1367(a), the court first must determine whether Plaintiff's state law claims against the Pace Defendants are so closely related to Plain-

tiff's § 1983 claim against Beaman that the claims form part of the "same case or controversy." *Id.; see also Hudson v. Delta Air Lines, Inc.,* 90 F.3d 451, 455 (11th Cir.1996); *Roberts v. Lakeview Community Hosp.,* 985 F.Supp. 1351, 1351 (M.D.Ala.1997). To determine "whether a state law claim is part of the same case or controversy as a federal issue," the court looks "to whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence." *Hudson,* 90 F.3d at 455.

In applying the *Hudson* factors, the court finds that the federal and state law claims do not arise from the same facts or occurrences. The facts and circumstances underlying Plaintiff's state law claims will focus on who possessed legal title to the property at issue and whether the Paces intentionally interfered with Plaintiff's Assignment of the Contract from Walker.[28] *See Penttala v. David Hobbs BMW,* 698 So.2d 137 (Ala.Civ.App.1997); *Gross v. Lowder Realty Better Homes,* 494 So.2d 590 (Ala.1986). In contrast, at the trial on Plaintiff's Fourth Amendment unreasonable seizure claim, the inquiry will focus on whether, on June 29, 1996, Beaman was "acting under the color of state law" and whether his warrantless seizure of the property in Plaintiff's office was reasonable under the Fourth Amendment. *Puglise v. Cobb County, Georgia,* 4 F.Supp.2d 1172, 1180 (N.D.Ga.1998). Specifically, in determining the reasonableness of the warrantless seizure, the jury will have to determine whether probable cause and exigent circumstances existed. *See Reid,* 69

F.3d at 1113. Whether probable cause existed will not depend on the Paces' alleged disruption of Plaintiff's Assignment, nor will it turn on a legal determination of ownership or title. Rather, the probable cause inquiry for the jury will be whether "the facts available to [Beaman] would warrant a man of reasonable caution in the belief that certain items may be . . . stolen property or useful as evidence of a crime; [probable cause] does not demand any showing that such belief be correct or more likely true than false." *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).

Similarly, the question of whether exigent circumstances existed is wholly distinct from the factual issues to be resolved on Plaintiff's state law claims. That is, exigent circumstances involve whether, for example, a likelihood existed that the property at issue would be destroyed or removed. *See Reid,* 69 F.3d at 1113. In sum, the court finds that Plaintiff's federal civil rights claim against Beaman and Plaintiff's state law claims against the Pace Defendants do not "share a common nucleus of operative facts." *Serrano–Moran v. Grau–Gaztambide,* 195 F.3d 68, 69 (1st Cir.1999).

Further, the court finds that neither the evidence nor the content of the witnesses' testimony will be sufficiently similar. While some of the witnesses needed to prove the state and federal claims may be the same, the subject of their testimony will invariably be distinct. On Plaintiff's federal § 1983 claim, for example, testimo-

---

**28.** In *Penttala,* the Alabama Court of Civil Appeals explained that to establish a claim for conversion, a plaintiff must demonstrate one of the following: "(1) a wrongful taking; (2) an illegal assertion of ownership; (3) an illegal use or misuse of another's property; or (4) a wrongful detention or interference with another's property." 698 So.2d at 139. "Legal title" is an essential element in a conversion claim: "Legal title with immediate right of possession by the plaintiff[ ] to the converted property at the time of conversion is a necessary element of the conversion action." *Roberson v. Ammons,* 477 So.2d 957, 962 (Ala.1985).

In *Gross,* the Supreme Court held that to prevail on a claim for "intentional interference with business or contractual relations," a plaintiff must prove the following four elements:
"(1) The existence of a contract or business relation; (2) Defendant's knowledge of the contract or business relation; (3) Intentional interference by the defendant with the contract or business relation; (4) Absence of justification for the defendant's interference." 494 So.2d at 597.

ny from the Paces concerning the information they relayed to Beaman may well be relevant to the probable cause determination. However, the Paces' testimony regarding ownership of the property at issue or their relations with Plaintiff and Walker would have no bearing on the issues to be decided by the jury on the § 1983 claim. Additionally, on the § 1983 claim, the crucial witness and focus of the trial will be Beaman and his actions on June 29, 1996. However, Beaman's relevance to the state law claims appears to be negligible, as there is no evidence in the record showing that he has first-hand knowledge concerning ownership of the property at issue or the relations between the Paces and Plaintiff. Therefore, the court finds that there is not a sufficient nexus between the evidence relevant to prove the federal and state law claims.

Based on the foregoing, the court finds that it does not have supplemental jurisdiction over Plaintiff's state law claims against the Pace Defendants. Namely, the court finds that Plaintiff's state law claims are not "so related" to Plaintiff's federal claims "that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Accordingly, Counts 4 and 5 are due to be dismissed without prejudice.[29] However, pursuant to 28 U.S.C. § 1367(d), Plaintiff may re-file his state law claims in state court within thirty days of this Memorandum Opinion And Order or within the remaining period of the appropriate state statute of limitations, whichever is longer. *See U.S. Anchor Mfg., Inc. v. Rule Industries, Inc.*, 7 F.3d 986, 1005 (11th Cir.1993) (Under § 1367(d), the statute of limitations is tolled while claims are pending until thirty days after an order of dismissal, thus allowing the plaintiff time for filing a new action in State court without a lapse

of its rights.); *Linder v. Richmond County, Ga.*, 844 F.Supp. 764, 769 (S.D.Ga.), *aff'd*, 38 F.3d 574 (11th Cir.1994).

### ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that the City Defendants' Motion For Summary Judgment, filed December 9, 1999, be and the same is hereby GRANTED in part and DENIED in part as follows:

(1) Summary judgment be and the same is hereby GRANTED as to Counts 1, 2 and 3 of Plaintiff's First Amended Complaint against the City of Andalusia and Kenny Wheeler in his individual and official capacities;

(2) Summary judgment be and the same is hereby GRANTED as to Counts 1 and 2 of Plaintiff's First Amended Complaint against James E. Beaman in his individual and official capacities;

(3) Summary judgment be and the same is hereby GRANTED as to Count 3 of Plaintiff's First Amended Complaint against James E. Beaman in his official capacity;

(4) Summary judgment be and the same is hereby DENIED as to Count 3 of Plaintiff's First Amended Complaint against James E. Beaman in his individual capacity; and

(5) Summary judgment be and the same is hereby DENIED AS MOOT as to Counts 4 and 5 of Plaintiff's First Amended Complaint.

It is further CONSIDERED and ORDERED that the Pace Defendants' Motion For Summary Judgment, filed December 21, 1999, be and the same is hereby GRANTED as to Counts 1, 2 and 3 of

---

**29.** Alternatively, assuming *arguendo* that the federal and state law claims formed part of the "same case and controversy," the court would nonetheless decline to exercise supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(a). Section § 1367(c) lists four circumstances where district courts in their discretion may decline to exercise supplemental jurisdiction. *Id.* § 1367(c). Here, based on the unrelatedness of the federal and state law claims, as discussed above, the court would find that Plaintiff's state law claims substantially predominated over Plaintiff's remaining federal claim against Beaman. *See* 28 U.S.C. § 1367(c)(2).

Plaintiff's First Amended Complaint and that Counts 4 and 5 of Plaintiff's First Amended Complaint against the Pace Defendants be and the same are hereby DISMISSED WITHOUT PREJUDICE.